FILED

2006 May-16  PM 01:08
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

FILED

06 MAY 16 AM 8: 50

U.S. DISTRICT COURT
N.D. OF ALABAMA

DOYLE LEE HAMM,                         )
                                        )
        Petitioner,                     )          CV-06-BE-0945-NE
                                        )
vs.                                     )
                                        )       Case No. _____
RICHARD ALLEN,                          )
                                        )
        Commissioner, Alabama           )
        Department of                   )
        Corrections,                    )
                                        )
        Respondent.                     )


**PETITION FOR WRIT OF HABEAS CORPUS
BY PRISONER IN STATE CUSTODY UNDER DEATH SENTENCE**


Bernard E. Harcourt
Professor of Law
University of Chicago Law School
1111 E 60th St.
Chicago, IL 60637
(773) 834-4068

Counsel for Mr. Hamm

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | | |
|---|---|---|
| DOYLE LEE HAMM, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | Case No. _____ |
| | ) | |
| RICHARD ALLEN, | ) | |
| | ) | |
| Commissioner, Alabama | ) | |
| Department of | ) | |
| Corrections | ) | |
| | ) | |
| Respondent. | ) | |

## PETITION FOR WRIT OF HABEAS CORPUS
## BY PRISONER IN STATE CUSTODY UNDER DEATH SENTENCE

Doyle Lee Hamm, now incarcerated on death row at Donaldson
Correctional Facility in Bessemer, Alabama, respectfully petitions
this Court for relief from his unconstitutionally obtained
conviction of capital murder and sentence of death pursuant to 28
U.S.C. §2254.

## I.    INTRODUCTION

1.    This case involves a late-night robbery and fatal
shooting of a night desk clerk (Patrick Cunningham) at a road-side
motel in Cullman, Alabama. The robbery-murder occurred almost
twenty years ago, in the late evening of Saturday, January 24,

1

1987. Three suspects were arrested: Regina Roden, Douglas Roden, and petitioner, Doyle Lee Hamm.

2. The prosecutor argued that Regina Roden was the get-away driver. The only impartial witness who saw individuals in the motel lobby immediately prior to the robbery-murder was Kathryn Teresa Flanagan, and she could only identify a woman and Douglas Roden. Douglas Roden turned state's witness and testified that Doyle Hamm was the person who pulled the trigger; Regina Roden also turned state's witness and testified again Mr. Hamm. Other than the testimony of Douglas and Regina Roden and an unconstitutionally obtained, coerced confession of Doyle Hamm, there was no direct, independent evidence as to who pulled the trigger.

3. Douglas Roden, the evidence in post-conviction reveals, was diagnosed as having borderline and possibly antisocial personality, suffered from serious alcohol and drug addiction, had a long history of drug and alcohol abuse including IV drugs, and was kicked out of drug treatment at Bryce Hospital (while he was being evaluated on this arrest) for illicitly using illegal drugs and lying to his counselors. None of this exculpatory information was turned over to Mr. Hamm's counsel at trial and, as a result, none of this evidence was used to impeach the prosecutor's chief witness and self-confessed accomplice.

4. To compound the error, the trial court failed to instruct the jury in this robbery-murder case on the lesser-included offense of robbery-murder. The court acknowledged that there was evidence

2

of voluntary intoxication and instructed the jury on voluntary intoxication, but failed to give the jury an instruction on felony-murder.

5. At his capital sentencing hearing, Doyle Hamm was sentenced to death in part based on two prior convictions for robbery that allegedly occurred on another Saturday evening, ten years earlier, on September 17, 1977, in Tennessee. Those two prior convictions were unconstitutionally obtained for a number of compelling reasons, and should not have been considered by the sentencing judge.

6. At his trial and sentencing, Mr. Hamm was represented by an appointed attorney who, on the third day of the guilt-phase of the trial on September 24, 1987, was appointed Special Assistant to the Attorney General, and was therefore made part of the same law office as the prosecution team, which included Assistant Attorney General Tom Sorrells of the Alabama Attorney General's Office. Appointed counsel suffered from a conflict of interest that denied Mr. Hamm his right to counsel.

7. Moreover, trial counsel failed to investigate and to present mitigating evidence at the penalty phase, especially evidence of Mr. Hamm's mental health impairments, education, family upbringing, and medical problems, as well as at the guilt-phase. Trial counsel only called two witnesses at the sentencing hearing, Mr. Hamm's sister and a deputy sheriff (the latter gave one-page testimony). Counsel failed to investigate and discover a wealth of

3

documents and testimonial evidence that could have been presented at the sentencing. This documentary evidence includes lengthy criminal records of his family members, his school records, his medical and mental health records. Possible testimonial evidence included the testimony of a social worker, of a psychologist, and psychiatrist to document Mr. Hamm's mental health issues.

8. In the state post-conviction proceedings, the state court prohibited Mr. Hamm's *pro bono* attorney, Bernard Harcourt, to represent him at the Rule 32 hearing. Over Mr. Hamm's repeated protests and Mr. Harcourt's repeated objections, the state post-conviction court excluded Mr. Harcourt from the Rule 32 proceedings.

9. In addition, the state post-conviction court completely abdicated its role as impartial decision-maker. The state court simply signed the Alabama Attorney General's proposed memorandum opinion without even changing the caption of the order. Still today, the state court's order in this case reads: **"PROPOSED MEMORANDUM OPINION."** The state court made no specific findings that the Attorney General's conclusions were his own. The order is repeatedly date stamped "Dec 3 1999" — the day that the Attorney General filed the proposed order — **AND** "Dec 6 1999" — the day that Judge Hardeman signed the "Proposed Memorandum Opinion" without even changing the caption.

10. Numerous other constitutional flaws infected Mr. Hamm's trial, appeal, and state post-conviction proceedings. For these

and the other reasons pled in this petition, the capital murder conviction and sentence of death in this robbery-murder case were unconstitutionally obtained. The state court adjudication of these claims resulted in a decision that was contrary to, and involved an unreasonable application of, clearly established United States Supreme Court precedent. Pursuant to 28 U.S.C. §2254, this court should grant Mr. Hamm's habeas corpus petition and return the case to state court for a new trial and sentencing.

## II.   PROCEDURAL HISTORY

11.   On September 26, 1987, Doyle Hamm was convicted of the capital offense of murder during a robbery under § 13A-5-40 (a) (2), Code of Alabama (1975), in the Circuit Court of Cullman County, Judge Fred Folsom presiding.

12.   On September 28, 1987, a sentencing hearing was conducted and the jury returned an advisory verdict in favor of death by a vote of 11 to 1.

13.   Judge Folsom held a pre-sentence hearing on November 9, 1987, and sentenced Doyle Hamm to death in the electric chair on December 1, 1987.

14.   The Court of Criminal Appeals of Alabama affirmed the conviction and sentence on June 16, 1989. Hamm v. State, 564 So. 2d 453 (Ala. Cr. App. 1989). That decision was affirmed by the Supreme Court of Alabama on March 23, 1990. Ex parte Hamm, 564 So. 2d 469 (Ala. 1990).

5

15. The United States Supreme Court denied Doyle Hamm's petition for writ of certiorari to the Alabama Supreme Court on December 3, 1990. Hamm v. Alabama, 112 L.Ed. 2d 579 (1990).

16. In December 1990, Mr. Hamm obtained new counsel, Bernard E. Harcourt, to represent him in a state post-conviction challenge to his conviction and sentence of death.

17. Mr. Harcourt filed a Rule 32 state post-conviction petition on behalf of Mr. Hamm on December 3, 1991.

18. Mr. Hamm's Rule 32 petition was initially assigned to Judge Folsom of the Cullman County Circuit Court. Judge Folsom conducted a pre-trial hearing in the case on July 10, 1992, and set the case for another hearing on March 6, 1995, but retired shortly before that scheduled hearing.

19. Mr. Hamm's Rule 32 petition was transferred to Judge Don Hardeman of the Cullman Circuit Court, and Judge Hardeman held pre-trial hearings on March 6, 1995 and January 8, 1996.

20. During this period, Mr. Hamm, through his attorney, Mr. Bernard Harcourt, also challenged two prior convictions from the State of Tennessee that were used as aggravating circumstances at his Alabama death penalty sentencing hearing. Mr. Hamm filed a state post-conviction petition in Lawrence County, Tennessee, challenging these prior convictions on August 10, 1992. That petition was denied by the Tennessee circuit court. On February 12, 1997, the Tennessee Court of Criminal Appeals affirmed the denial of relief. On March 14, 1997, Mr. Hamm filed an *Application*

6

*for Permission to Appeal* with the Tennessee Supreme Court, which was denied on June 2, 1997. On June 16, 1998, Mr. Harcourt filed a *Petition for Writ of Habeas Corpus* on behalf of Doyle Hamm in the United States District Court for the Middle District of Tennessee, Columbia Division. The petition was dismissed by the Federal District Court, and the Sixth Circuit Court of Appeals denied Mr. Hamm a certificate of appealability on March 17, 1999.

21. Meanwhile, back in Alabama, in March 1998, Judge Hardeman set Mr. Hamm's Rule 32 petition for final hearing on June 29, 1998. Counsel for Mr. Hamm, Bernard Harcourt, had a conflict on that date and requested a continuance of the hearing date.

22. On May 1, 1998, Judge Hardeman prohibited Mr. Harcourt from further representing Mr. Hamm. Judge Hardeman entered an order stating that "you [Mr. Harcourt] are hereby withdrawn as counsel for Doyle Lee Hamm in the above case. The Court will appoint new counsel for Mr. Hamm and you are immediately relieved of any further action in this matter." The court appointed a local attorney, Pam Nail, to represent Mr. Hamm.

23. In response to the court's action, Mr. Harcourt requested by letter that he be allowed to represent Mr. Hamm as co-counsel. Judge Hardeman did not respond to this letter. Instead, Judge Hardeman set the case for hearing on December 11, 1998, and did not notify Mr. Harcourt.

7

24.  Pam Nail filed a motion for continuance of the hearing scheduled for December 11, 1998, and the Rule 32 hearing was continued three times.

25.  On March 24, 1999, Mr. Harcourt filed a motion with the court to be notified about the hearing date.  Mr. Harcourt then filed another motion to be notified of the court proceedings on April 7, 1999.

26.  On April 14, 1999, Judge Hardeman entered an order denying Mr. Harcourt's motions to be notified or reappointed.  In the order, Judge Hardeman threatened Mr. Harcourt with contempt of court. Mr. Harcourt filed a motion for reconsideration, which Judge Hardeman denied on May 3, 1999.

27.  Judge Hardeman rescheduled the Rule 32 hearing for July 26, 1999. Prior to the hearing, Mr. Hamm filed an affidavit with the court stating that "I want Mr. Harcourt to continue to represent me in my case in Cullman, Alabama.  Whether Pamela Nail does or does not act as counsel, I want Mr. Harcourt to be my attorney."

28.  Judge Hardeman held the Rule 32 hearing on July 26, 1999. At the hearing, Mr. Hamm told Judge Hardeman that "I object to the proceeding in this Rule 32 Petition without my counsel of choice, Bernard Harcourt."

29.  Over petitioner Hamm's protests, Judge Hardeman held the hearing without Mr. Harcourt.  Mr. Hamm was represented at that hearing by Pam Nail.  Ms. Nail presented none of the evidence that

Mr. Harcourt had disclosed in his motions.   Ms. Nail called no witnesses other than trial counsel, who were hostile to Mr. Hamm's interests.

30.   Shortly thereafter, Pam Nail withdrew as counsel for Mr. Hamm, stating that "due to [her] health, she will be undergoing therapy and will be unable to handle the appeal."

31.   On Friday, December 3, 1999, the Alabama Attorney General filed with the lower court a "PROPOSED MEMORANDUM OPINION." (Letter from Assistant Attorney General Beth Hughes to Judge Hardeman).

32.   On Monday, December 6, 1999, without even modifying the caption of the order and making any changes to the proposed order, Judge Hardeman signed the "PROPOSED MEMORANDUM OPINION."   The court's order denying Mr. Hamm's Rule 32 petition in this case, to this day, is still called the "PROPOSED MEMORANDUM OPINION."

33.   Bernard Harcourt filed an appeal on Mr. Hamm's behalf with the Alabama Court of Criminal Appeals challenging the denial of the Rule 32 petition and the unconstitutional procedures that surrounded the Rule 32 proceedings.

34.   On February 1, 2002, the Alabama Court of Criminal Appeals affirmed the denial of Mr. Hamm's Rule 32 petition.   Doyle Lee Hamm v. State, 913 So. 2d 460 (Ala. Cr. App. 2002).

35.   On April 19, 2002, the Alabama Court of Criminal Appeals denied Mr. Hamm's application for rehearing.   Doyle Lee Hamm v. State, 2002 Ala. Crim. App. LEXIS 3242 (2002).

36. Mr. Hamm filed a timely petition for writ of certiorari with the Alabama Supreme Court on April 30, 2002. The Alabama Supreme Court denied Mr. Hamm's certiorari petition three years later on May 20, 2005.

37. Mr. Hamm filed a timely certiorari petition with the United States Supreme Court, which was denied by the Supreme Court on November 14, 2005. Doyle Lee Hamm v. Alabama, 126 S.Ct. 651 (2005). This habeas corpus petition follows in a timely fashion.

### III. GROUNDS SUPPORTING THE PETITION FOR RELIEF

### A. THE TRIAL COURT FAILED TO INSTRUCT THE JURY ON THE LESSER INCLUDED OFFENSE OF FELONY-MURDER IN VIOLATION OF STATE LAW AND PETITIONER'S CONSTITUTIONAL RIGHTS GUARANTEED BY BECK v. ALABAMA

38. The facts underlying this case involve the robbery-murder of a night desk clerk, Mr. Patrick Cunningham, at a road-side motel in Cullman, Alabama. Mr. Cunningham was fatally shot during the course of a robbery late in the evening. Mr. Hamm was charged with intentional robbery-murder under the Alabama capital statute. Mr. Hamm's principal defense at trial was that he was intoxicated and was not the trigger-person. His defense negated the element of intent. Because the evidence at trial raised the question of intoxication, the trial court instructed the jury on voluntary intoxication.

39. However, the court improperly instructed the jury that voluntary intoxication would reduce capital murder to *manslaughter*, rather than felony-murder. The court's instruction stated:

In the event that you are convinced beyond a reasonable doubt
from the evidence, ladies and gentlemen, that the defendant
was guilty of the capital offense as charged in the indictment
and as that term has been defined to you, but *at that time he
was voluntarily intoxicated* to the extent that he could not
form the necessary intent required to commit this offense, as
I have defined this term to you, then I charge you that you
could not find him guilty of the capital offense charged in
the indictment, but that you should find him guilty of
*manslaughter*. R-1182.

40. The court's charge was incorrect as a matter of
elementary criminal law and Alabama state law.

41. If the jury found that Doyle Hamm was intoxicated and
unintentionally killed a person during the course of a robbery,
then Doyle would have been guilty of murder under the felony-murder
doctrine. § 13A-6-2 (a) (3), Alabama Code (1975).

42. It is well established in Alabama and every other
jurisdiction in this country that "an unintentional killing during
the course of a robbery is . . . murder under the felony murder
doctrine." Coulter v. State, 438 So. 2d 336, 344 (Ala. Cr. App.
1982), aff'd, Ex parte Coulter, 438 So. 2d 352 (Ala. 1983).

43. Because there was evidence of voluntary intoxication, the
court's failure to give the jury the third option of convicting
Doyle Hamm of a serious, non-capital crime (murder under the felony
murder doctrine) undermined the reliability of the jury's verdict
and denied Doyle Hamm his rights to due process and a fair trial
guaranteed by the Fifth, Sixth, Eighth and Fourteenth Amendments to
the United States Constitution. Beck v.Alabama, 447 U.S. 625
(1980); Hopper v. Evans, 456 U.S. 605 (1982). The state court
adjudication of this claim resulted in a decision that was contrary

11

to, and involved an unreasonable application of, clearly established United States Supreme Court precedent.

## B. THE PROSECUTOR FAILED TO TURN OVER TO THE DEFENSE MATERIAL EXCULPATORY EVIDENCE IN VIOLATION OF BRADY V. MARYLAND

44. The prosecutor did not make available to the defense the complete prosecution files in accordance with Alabama law in a capital case. As a result, exculpatory materials and critical mitigating evidence were withheld in violation of Brady v. Maryland, 373 U.S. 83 (1963).

45. The prosecutor failed to disclose material evidence concerning the co-defendant, Doug Roden. These records include correctional, medical and mental health records that were sealed and never disclosed to defense counsel.

46. The prosecutor failed to disclose records from Central Records at the Department of Corrections that revealed that Doug Roden was diagnosed as having borderline and possibly antisocial personality, and was suffering from alcohol and substance abuse problems.

47. The prosecutor failed to disclose records from the Correctional Medical Systems at Mt. Meigs that revealed that Doug Roden suffered from drug addiction; that Roden was diagnosed as borderline and possibly antisocial personality and addicted to alcohol and drugs; that Roden was recommended to be placed on "substance abuse counseling" as well as "reality" and "self-concept

enhancement" therapy; and that Roden spent 16 weeks at a drug treatment unit.

48. The prosecutor failed to disclose records from Bryce Hospital in Tuscaloosa, that revealed that Roden was placed in the "Treatment Center for Alcohol and Drug Abuse" at Bryce Hospital; that Roden had a substance abuse problem and even used drugs on hospital grounds when he was in treatment; that Roden was eventually kicked out of the drug treatment program for taking drugs and lying to his counselors; that Roden was diagnosed with alcohol abuse and mixed substance abuse; that Roden had a history of drug and alcohol abuse "including IV drugs"; that Roden had a "History of heavy Marijuana Smoking"; that Roden recited "a history of drug use beginning with glue sniffing dating back to about the age of 12"; that Roden admitted abusing "alcohol and drugs since the age of twelve"; that Roden also lied repeatedly about his condition, telling some doctors at Bryce that "he does not think he has an alcohol or drug problem as he can always 'take it or leave it'"; that Roden had been "picked up for Public Intoxication several times"; that Roden had a history of alcohol and mental health problems in his family; and that the psychological evaluation "indicates significant dysfunctions."

49. None of this was turned over to defense counsel. As a result, at trial, counsel for Mr. Hamm had no evidence to impeach Doug Roden about his track record of lying, about his own drug problems, or about his mental health problems.

13

50.   In addition, the prosecutor failed to turn over in a timely manner prior statements by Ms. Kathryn Flannagan.  Kathryn Teresa Flanagan was shown two picture line-ups and three live line-ups.   Ms. Flanagan was able to identify two individuals.   Ms. Flanagan identified Ms. Paula Cook as being the first person that walked into the motel.  Ms. Flanagan also identified Douglas Roden as being either the first or the second person in the motel.  Ms. Flanagan did not identify Doyle Hamm in the line-ups.

51.  There is a reasonable probability that, had the prosecutor made the complete files available as required, "the result of the proceeding would have been different."  United States v. Bagley, 473 U.S. 667, 682 (1985).  The prosecutor's withholding of this information denied Mr. Hamm his rights to due process, a fair trial and a reliable sentencing proceeding in violation of the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.   Brady; Bagley; Kyles v. Whitley, 115 S.Ct. 1555 (1995); Green v. Georgia, 442 U.S. 95 (1979). The state court adjudication of this claim resulted in a decision that was contrary to, and involved an unreasonable application of, clearly established United States Supreme Court precedent.

**C. IT WAS IMPROPER FOR THE STATE COURT TO CONSIDER UNCONSTITUTIONALLY OBTAINED PRIOR CONVICTIONS AT THE SENTENCING PHASE IN VIOLATION OF DOYLE HAMM'S RIGHTS TO DUE PROCESS AND TO BE FREE OF CRUEL AND UNUSUAL PUNISHMENT.**

52. In September 1977, Doyle Hamm was indicted on two counts of armed robbery in the State of Tennessee. On February 2, 1978, Mr. Hamm pled guilty to two counts of simple robbery and was sentenced to five years in the state penitentiary.

53. The state introduced evidence of these two Tennessee convictions at the penalty phase of Doyle's Alabama death penalty trial.

54. For a number of reasons, those convictions were unconstitutionally obtained. Mr. Hamm was not notified of the rights that he was waiving by pleading guilty in Tennessee court in violation of Boykin v. Alabama, 395 U.S. 238 (1969). Mr. Hamm did not receive the effective assistance of counsel by his Tennessee appointed lawyer in violation of Strickland v. Washington, 466 U.S. 688 (1984). Mr. Hamm's guilty pleas were not voluntary, knowing or intelligent in violation of Machibroda v. U.S., 368 U.S. 487 (1962). Mr. Hamm was denied the right to appeal in violation of Douglas v. California, 372 U.S. 353 (1963) and Boykin, supra. Moreover, newly discovered evidence establishes that Mr. Hamm was actually innocent of robbery and therefore his convictions are invalid.

55. The introduction of these unconstitutionally obtained guilty pleas at his trial in Alabama and their use as aggravating

circumstances render his sentence of death constitutionally infirm. Johnson v. Mississippi, 486 U.S. 578 (1988). In addition, because Alabama trial counsel unreasonably failed to investigate these prior convictions, Mr. Hamm received ineffective assistance of counsel at his death penalty trial. Strickland v. Washington, 466 U.S. 688 (1984).

56.   In order to place this claim in context, it is important to understand the background of the events leading up to his guilty pleas in Tennessee. On September 7, 1977, Doyle Lee Hamm, Don Harrison and Mark Sherrod were drinking heavily and smoking marijuana outside of a Tennessee bar when Hamm and Harrison got into a fist fight that several people witnessed. Soon thereafter, police approached Harrison and Sherrod.  Fearing that they would be arrested for possession of marijuana and fighting, the two concocted a story that they had been robbed by Hamm. Doyle Hamm was then arrested and charged with two counts of simple robbery. Although both accusers had credibility-shattering prior convictions and over seven witnesses were willing to testify that there had been no robbery, Doyle Hamm was advised to plea guilty by his court appointed lawyer, William Travis Gobble. Doyle Hamm, not aware of his rights or his constitutional protections as a defendant, submitted to the arrangement.   Mr. Gobble had not investigated Hamm's case whatsoever.

57.   Mr. Hamm's guilty pleas were unconstitutional because he was not informed of the constitutional rights he was waiving by

16

pleading guilty. This is facially clear from the transcript of the plea hearing. Mr. Hamm was neither aware, nor was he informed of his right to confront his accusers, of his right of compulsory process, or of his right against compulsory self-incrimination. Because he was not made aware of these fundamental rights by either his counsel or the trial court, and did not know them, Mr. Hamm was denied the rights guaranteed by the Fifth, Sixth, Eighth and Fourteenth Amendments.

58. Mr. Hamm's convictions for simple robbery were unconstitutional because he was denied the effective assistance of counsel. His appointed counsel, Mr. Travis Gobble, did not investigate any aspect of the case before advising Hamm to plead guilty. Gobble admits that he "relied too heavily upon the state's account that a robbery had occurred." Mr. Gobble also failed to notify Mr. Hamm of his constitutional rights. These failures prejudiced Doyle Hamm, as he would not have pled guilty had he known about his lawyer's inadequacies. Because of his counsel's incompetent representation, Mr. Hamm was denied effective assistance of counsel in violation of the Sixth, Eighth, and Fourteenth Amendments.

59. Mr. Hamm's convictions for simple robbery were unconstitutional because he did not knowingly, intelligently or voluntarily plead guilty. Defense counsel discussed nothing with Mr. Hamm other than what Hamm should say when he was in front of the judge. Mr. Hamm did not understand the nature of the charge

17

that he was pleading to, nor did he comprehend that he had any choice at all. Doyle Hamm was convicted on an unknowing, unintelligent, involuntary guilty plea in violation of the Sixth, Eighth, and Fourteenth Amendments.

60.  Mr.  Hamm's  convictions  for  simple  robbery  were unconstitutional because he was denied his right to appeal. Both the court and the district attorney-general, Robert Gay, mistakenly informed Mr. Hamm that he had no right to appeal:

Mr. Gay -       He has no right of appeal, Your Honor, on
                a plea of Guilty

The Court -     I doubt he would have.

Mr. Gay -       The law is clear, I believe, on that.

The Court -     Yes, sir. He has no right of appeal on a
                plea of Guilty.

Mr. Gay -       That's right, Your Honor.

The denial of Doyle Hamm's right to appeal was a denial of his fundamental right to due process and violated the Sixth, Eighth, and Fourteenth Amendments.

61.  Mr.  Hamm's  convictions  for  simple  robbery  were unconstitutional because newly discovered evidence proves that Mr. Hamm is innocent of robbery. One of Hamm's alleged victims now states that he was never robbed by Mr. Hamm.   Also, four eye witnesses, never contacted by Mr. Gobble, have testified that no robbery took place.  To sentence Mr. Hamm to death on the basis of charges for which he was innocent violates due process and his right to be free from cruel and unusual punishment guaranteed by

18

the Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

62. The court's reliance on these unconstitutionally obtained convictions prejudiced Doyle Lee Hamm. The prosecutor presented these prior convictions as an aggravating circumstance in Mr. Hamm's Alabama capital trial in 1987, and the court relied on them in sentencing Mr. Hamm to death. For all of these reasons, the court's reliance on the unconstitutional prior convictions violated Mr. Hamm's Eighth Amendment right to be free of cruel and unusual punishment and Fourteenth Amendment right to due process.

63. The special reliability concerns present in death penalty cases mandate the review of constitutionally questionable prior convictions when those prior convictions form the underlying aggravating circumstance. As a death penalty case, Mr. Hamm's conviction has the 'special need for reliability' implicated in Johnson v. Mississippi, 486 U.S. 578, 584 (1988). In addition, this is the rare type of case where the trial court in the underlying Tennessee case misinformed Mr. Hamm that he had no right of appeal and failed to appoint counsel on appeal. Doyle Hamm was also not informed of bedrock rights, such as the right to confront his accuser or his privilege against compelled self-incrimination, and these flagrant errors are obvious from the transcript of the Tennessee plea hearing. The right to appellate counsel is fundamental to our concept of ordered liberty. Failing to appoint counsel for an indigent defendant's first appeal as of right

19

seriously deprives him of the most fundamental procedural safeguards that our criminal justice system provides. In addition, Mr. Hamm is actually innocent of the crimes for which he was convicted in Tennessee. For all of these reasons, this court must review Doyle Hamm's unconstitutionally obtained prior convictions and grant this habeas corpus petition. The state court adjudication of this claim resulted in a decision that was contrary to, and involved an unreasonable application of, clearly established United States Supreme Court precedent.

**D. THE PROSECUTOR AMBUSHED DEFENSE COUNSEL BY FAILING TO DISCLOSE, OR TO PRODUCE IN DISCOVERY, THE AGGRAVATING CIRCUMSTANCES THAT THE STATE INTENDED TO PROVE, IN VIOLATION OF DOYLE'S CONSTITUTIONAL RIGHTS TO DUE PROCESS, A FAIR TRIAL, AN INDIVIDUALIZED SENTENCING HEARING, AND TO BE FREE FROM CRUEL AND UNUSUAL PUNISHMENT**

64.   The state did not inform appointed counsel before trial that it would attempt to prove the existence of the aggravating circumstance listed at § 13A-5-49(2), Ala.   Code (1975), namely that Doyle Hamm had been previously convicted of a felony involving the use or threat of force to the person. The aggravating circumstance was not listed in the indictment, nor disclosed to trial counsel.

65.   Despite that, at the penalty phase of Doyle's trial, the state introduced evidence of two convictions for simple robbery from the State of Tennessee.   The state's failure to disclose that it intended to rely on the prior felony convictions denied Doyle

Hamm the opportunity to challenge the prior convictions pre-trial and therefore violated petitioner's rights to due process, to present a defense, to a fair trial, to an individualized sentencing, and to be free from cruel and unusual punishment guaranteed by the Sixth, Eighth and Fourteenth Amendments to the United States Constitution. The state court adjudication of this claim resulted in a decision that was contrary to, and involved an unreasonable application of, clearly established United States Supreme Court precedent.

**E. THE CAPITAL SENTENCING JURY WAS INFORMED THAT DOYLE HARM WAS CHARGED WITH TWO COUNTS OF <u>ARMED</u> ROBBERY IN TENNESSEE, EVEN THOUGH HE WAS ONLY CONVICTED OF SIMPLE ROBBERY, IN VIOLATION OF PETITIONER'S RIGHTS GUARANTEED BY THE SIXTH, EIGHT AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.**

66. During the penalty phase of Doyle Hamm's capital trial, the state introduced only two additional pieces of evidence, namely these two judgments concerning prior convictions for simple robbery from the State of Tennessee.

67. The trial court did not allow the indictments into evidence because they charged Doyle with a greater crime (armed robbery) than that which he was convicted (simple robbery); nevertheless, the judgments of conviction were admitted into evidence, over objection, as State's Exhibits 1-A and 1-B.

68. State's Exhibit 1-A bears a caption in large, capitalized letters, that says ARMED ROBBERY.

69. State's Exhibit 1-A also states in the text of the very first paragraph that Doyle Hamm has been arraigned upon the indictment for Armed Robbery.

70. State's Exhibit 1-B similarly bears a caption in large, capitalized letters, that says ARMED ROBBERY.

71. State's Exhibit 1-B also states in the text of the very first paragraph that Doyle Hamm has been arraigned upon the indictment for Armed Robbery.

72. The fact that the capital sentencing jury was informed that Doyle Hamm had been charged with the greater offense of armed robbery on both counts denied petitioner his right to a fair trial, to an individualized sentence and to be free from cruel and unusual punishment in violation of the Sixth, Eighth and Fourteenth Amendments to the United States Constitution. The state court adjudication of this claim resulted in a decision that was contrary to, and involved an unreasonable application of, clearly established United States Supreme Court precedent.

**F. DOYLE HAMM WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL AT TRIAL AND ON APPEAL, IN VIOLATION THE SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION**

(1) The State Interfered With Doyle Hamm's Right To The Effective Assistance of Counsel By Placing Unreasonable Financial Constraints On His Court Appointed Lawyers

73. Due to the unreasonable financial constraints imposed on trial and appellate counsel by the State of Alabama, see § 1512-21

(d) , Alabama Code (1975) , Doyle Hamm was denied constitutionally effective assistance of counsel.

74. Because counsel was not being remunerated for out-of-court costs beyond $1,000, counsel simply could not afford to conduct the kind of investigation that is required in a death penalty case.

75. Counsel could not travel to Tennessee and investigate and challenge Petitioner's prior convictions in Tennessee.

76. Counsel could not afford to travel throughout Alabama and Mississippi and document the impoverished and traumatic background of Doyle Hamm.

77. Counsel could not afford to conduct the time-consuming and expensive mental health investigation required to effectively present Doyle's mental health condition.

78. Counsel could not afford to conduct the background investigation throughout Alabama of the co-defendant and triggerperson, Douglas Roden.

79. Petitioner was also denied effective assistance of counsel on appeal by the insufficient funding provided by the State of Alabama for the compensation of capital appellate attorneys and for their expenses.

80. For these and other reasons, the State of Alabama denied Doyle Hamm the effective assistance of counsel by placing unreasonable financial constraints on appointed counsel, resulting in petitioner's improper conviction for capital murder and improper sentence of death.

(2) Trial and Appellate Counsel Suffered from a Conflict of Interest

81. Mr. Hamm's trial counsel was actually operating under a conflict of interest: on the third day of trial, September 24, 1987, during the guilt phase of the trial, defense counsel was appointed Special Assistant to the Attorney General, and was therefore part of the same law office as the prosecution team, which included Assistant Attorney General Tom Sorrells, from the Attorney General's Office.

82. As a result, appointed counsel failed to give petitioner his undivided loyalty. Mr. Hamm's defense counsel did not inform Mr. Hamm of his appointment as Special Assistant to the Attorney General, nor did he seek a waiver of the conflict from his client. This conflict of interest violated Mr. Hamm's right to the undivided loyalty of his counsel. Cuyler v. Sullivan, 446 U.S. 335 (1980).

(3) Mr. Hamm Was Denied His 6th Amendment Right to Effective Assistance of Counsel When His Trial Counsel Failed to Challenge Hamm's Blatantly Unconstitutional Prior Convictions Within the Statute of Limitations, Causing Mr. Hamm to Receive the Death Penalty.

83. Doyle Hamm's trial counsel failed to investigate and challenge Mr. Hamm's blatantly unconstitutional prior convictions from Tennessee. These unconstitutional prior offenses aggravated Mr. Hamm's current offense, resulting in his sentence of death penalty. This error prejudiced Mr. Hamm and entitles him to habeas relief under Strickland v. Washington, 466 U.S. 668 (1984);

Rompilla v. Beard, 125 S. Ct. 2456, 2462 (2005); Wiggins v. Smith, 539 U.S.510, 521 (2003); and Williams v. Taylor, 529 U.S. 362, 396 (2000).

84. Had counsel been effective, he would have challenged Mr. Hamm's blatantly unconstitutional prior convictions. Mr. Hamm was on trial for his life and his prior convictions served as the state's only additional evidence at sentencing. The transcript of Mr. Hamm's Tennessee prior convictions shows, on its face, the obvious, extreme constitutional faults that permeated his plea. Failing to challenge the unconstitutionality of Mr. Hamm's prior convictions was grossly ineffective and violated his federal constitutional rights.

85. Mr. Hamm was tried in Alabama in 1987. At the time, in 1987, Mr. Hamm would have been able to challenge his prior convictions in Tennessee. The two-year statute of limitations on post-conviction review in Tennessee was enacted after 1987. Trial counsel's failure to challenge the prior convictions when the Tennessee courts would have had to consider the merits of the challenge was unreasonable conduct that severely prejudiced Mr. Hamm. It violated Mr. Hamm's federal right to the effective assistance of counsel. Strickland v. Washington, 466 U.S. 668 (1984); see generally Gregory G. Sarno, Annotation, Adequacy of Defense Counsel's Representation of Criminal Client Regarding Prior Convictions, 14 A.L.R. 4th 227 § 30 Acts or Omissions at Sentencing Phase (1982).

(4)   Ineffective Assistance of Counsel At Trial And on Appeal
      Constituted A Violation Of Petitioner's Sixth, Eighth And
      Fourteenth Amendment Rights

86. Trial counsel was ineffective in failing to investigate and to present mitigating evidence at the penalty phase, especially evidence of Mr. Hamm's mental health impairments, education, family upbringing, and medical problems, as well as at the guilt-phase. Trial counsel simply called two witnesses: Mr. Hamm's sister and a deputy sheriff, who gave one-page testimony to the effect that Mr. Hamm had been a cooperative prisoner for eight months.  Counsel failed to investigate and discover a wealth of documents and testimonial evidence that could have been presented at the sentencing.  This documentary evidence includes lengthy criminal records of his family members, his school records, his medical and mental health records.  Possible testimonial evidence included the testimony of a social worker, of a psychologist, and psychiatrist to document Mr. Hamm's mental health issues.  There is no acceptable reason — no possible strategic reason — why trial counsel did not present this wealth of mitigating evidence, documentary and testimonial.

87. Counsel failed to object at trial to the court's failure to give a felony-murder instruction and failed to raise this issue on appeal, resulting in petitioner's improper conviction for capital murder.

88. Counsel failed to object at trial to the court's instruction on accomplice liability and failed to raise this issue on appeal, resulting in Doyle Hamm's improper conviction.

89. Counsel failed to adequately object to the prosecutor's failure to disclose the aggravating circumstances that the state intended to prove at the sentencing hearing and failed to raise this issue on appeal, resulting in petitioner's denial of a fair and individualized sentencing procedure.

90. Counsel failed to adequately object to the introduction of evidence that Doyle Hamm was charged with armed robbery in Tennessee and failed to raise this issue on appeal, resulting in petitioner's improper sentence of death. Counsel failed adequately to make sure that the evidence of the two convictions presented to the jury were purged of the incorrect reference to "armed robbery" rather than "simple robbery."

91. Counsel failed to adequately investigate and challenge Doyle Hamm's prior convictions in Tennessee.

92. Counsel failed to adequately object to the court's instructions at the penalty phase and failed to raise the issues concerning penalty phase instructions on appeal.

93. Counsel failed to adequately object to the improper prosecutorial comments and to raise this issue on appeal, resulting in the denial of petitioner's right to a fair trial.

94. Counsel failed to adequately research, prepare and argue motions, including a Motion For Change of Venue, and failed to

27

raise these issues on appeal; counsel's failure to obtain a change of venue resulted in the denial of petitioner's right to a fair trial.

95. Counsel failed to adequately object to the trial court's consideration of illegally obtained and highly prejudicial letters of Doyle Hamm and of the improper pre-sentence report and failed to raise this issue on appeal, resulting in the court's improper sentence of death.

96. Counsel failed to adequately investigate and present at trial the effects of drug use on Doyle Hamm's mental health.

97. Counsel failed to adequately investigate and present at trial the effects of alcohol on Doyle Hamm's mental health.

98. Counsel failed to adequately object to the prejudicial security measures taken at trial and to raise this issue on appeal, resulting in the denial of petitioner's right to a fair trial.

99. Counsel failed to adequately object to venire members that were unalterably in favor of the death penalty and failed to raise this issue on appeal, resulting in the denial of petitioner's rights to an impartial jury and to the free exercise of peremptory challenges.

100. Counsel failed to adequately challenge for cause venire member Sylvia Burks and failed to raise her partiality on appeal.

101. Counsel failed to adequately elicit information from the venire members in *voir dire*, to adequately challenge potentially biased venire members and to strike certain jurors.

102. Counsel failed to adequately object to the unequal distribution of peremptory challenges between the State and the defense and failed to raise this issue on appeal.

103. Counsel failed to adequately object to the introduction of bullets, of a green army jacket and of testimony surrounding these items, and failed to raise these issues on appeal, resulting in the deprivation of due process and a fair trial.

104. Counsel failed to adequately investigate the culpability of other persons, resulting in petitioner's improper conviction for capital murder.

105. Counsel failed to adequately object to the state's failure to turn over in discovery exculpatory material and failed to raise this issue on appeal.

106. Counsel failed to adequately object to the court's instruction on reasonable doubt and failed to raise the issue on appeal, resulting in the denial of due process.

107. Counsel failed to adequately object to the trial court's refusal to give the proposed instruction on voluntary intoxication and failed to raise this issue on appeal.

108. Counsel failed to adequately object to the introduction of gruesome, prejudicial, manipulated and unnecessary photographs and failed to raise this issue on appeal.

109. Counsel failed to adequately object to the admission of Doyle Hamm's statement and of evidence seized in the search of the trailer and failed to adequately argue these issues on appeal.

110. Counsel failed to adequately investigate and present mental health defenses at the guilt and punishment phases, resulting in the improper sentence of death.

111. Counsel failed to object to the trial court's failure to qualify expert witnesses and failed to raise this issue on appeal.

112. Counsel failed to adequately object to the cruel and unusual nature of death by electrocution or lethal injection, and failed to raise this issue on appeal.

113. Counsel failed to adequately investigate the background, education, social and family history of Doyle Hamm and failed to adequately present a compelling case in mitigation of the death penalty.

114. Counsel failed to conduct an adequate pre-trial investigation; counsel failed to perform the sensitive and in-depth interviews with family members and other witnesses who could have provided mitigation evidence and failed to adequately present evidence at the guilt and penalty phase.

115. Counsel failed to present mitigation evidence to the trial court prior to sentencing, including evidence concerning petitioner's background and family life, mental health and other evidence that would have supported a case of life imprisonment without parole.

116. Counsel failed to adequately articulate to the sentencing court reasons why petitioner's life should be spared.

117. Trial counsel otherwise failed to prepare, investigate and pursue an effective defense on behalf of petitioner, resulting in his capital conviction and sentence of death.

118. Appellate counsel failed to effectively represent petitioner on appeal by raising claims with little likelihood of success and by failing to raise meritorious claims concerning infringements of petitioner's rights in violation of the Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

119. The above failures of trial and appellate counsel resulted in Doyle Hamm's improper conviction for capital murder and in the improper sentence of death, and, thus, jointly and separately, resulted in severe prejudice to Doyle Hamm's case. The representation by trial and appellate counsel denied Mr. Hamm the right to the effective assistance of counsel, in violation of Strickland v. Washington, *supra*; Rompilla v. Beard, 125 S. Ct. 2456, 2462 (2005); Wiggins v. Smith, 539 U.S.510, 521 (2003); Williams v. Taylor, 529 U.S. 362, 396 (2000). The state court adjudication of this claim resulted in a decision that was contrary to, and involved an unreasonable application of, clearly established United States Supreme Court precedent.

31

**G.    THE RULE 32 STATE POST-CONVICTION COURT UNCONSTITUTIONALLY PROHIBITED DOYLE HAMM'S ATTORNEY, BERNARD HARCOURT, FROM REPRESENTING HIM AT HIS RULE 32 HEARING IN VIOLATION OF HIS RIGHTS TO DUE PROCESS AND TO BE FREE FROM CRUEL AND UNUSUAL PUNISHMENT.**

120.  In the 1998 state post-conviction proceedings, Judge Hardeman impermissibly barred Mr. Hamm's attorney, Bernard E. Harcourt, from representing his client.    Mr. Harcourt had represented Mr. Hamm *pro bono* since 1990 in all state post-conviction proceedings, as well as in state post-conviction and federal habeas corpus proceedings in the state of Tennessee.  Over Mr. Hamm's repeated protest and over Mr. Harcourt's repeated objections, the Rule 32 court nevertheless barred Mr. Harcourt from attending the Rule 32 hearing, and ordered an appointed attorney, Pam Nail, to conduct the hearing.  Pam Nail called no witnesses at the Rule 32 hearing other than trial counsel.  She did not call the psychologist, or the social worker, or any of the numerous mitigating witnesses who would have testified at the hearing and who were known to her.  After doing nothing at the hearing, Ms. Nail then withdrew from representation, leaving Mr. Hamm without counsel.  During this entire period, Mr. Harcourt repeatedly moved the court to be allowed to represent Mr. Hamm, and Mr. Hamm repeatedly objected to the court's actions.   The state court's actions were a gross violation of Mr. Hamm's Sixth Amendment right "to have the Assistance of Counsel for his defence," his right to due process and to be free from cruel and unusual punishment in violation of the Sixth, Eighth and Fourteenth Amendments to the

U.S. Constitution. The actions of the state court in this particular case, in the famous words of Mr. Justice Potter Stewart, "can only lead [Mr. Hamm] to believe that the law contrives against him." Faretta v. California, 422 U.S. 806, 834 (1975).

121. The constitutional right to the assistance of counsel— i.e. the original Sixth Amendment right as written in the U.S. Constitution, not the Gideon right—applies in state criminal post-conviction proceedings in a death penalty case. This is the right to be represented by one's counsel under the United States Constitution. See Reynolds v. Alabama Dept. of Transp., 4 F.Supp.2d 1055, 1063 (M.D. Ala. 1998); F.T.C. v. Atlantex Associates, 872 F.2d 966, 970 (11th Cir. 1989); U.S. v. Romano, 736 F.2d 1432, 1437 (11th Cir. 1984); Mekdeci By and Through Mekdeci v. Merrell Nat. Labs., 711 F.2d 1510, 1523 (11th Cir. 983); see also Brief for Respondent, United States v. Cuauhtemoc Gonzalez-Lopez, No. 05-352 (argued in May 2006 at the United States Supreme Court).

122. That right was violated in this case. As a factual matter, Mr. Hamm had his own attorney in the state Rule 32 proceedings. Counsel was not appointed for him by the trial court or by any other court. Counsel was not afforded through a public defender office or any other legal service. Mr. Hamm was represented by attorney Bernard E. Harcourt, who, at the time of the Rule 32 hearing, was a private attorney, was (and still is) a member in good standing of the bar of the State of Alabama (among other states), and was representing Mr. Hamm pro bono. Moreover,

Mr. Harcourt had represented Mr. Hamm for many years:  since 1990 in his Alabama state post-conviction proceedings and since 1992 in his state post-conviction proceedings in Tennessee.

123. After more than nine years of representation by Bernard Harcourt in a complicated death penalty case, the state court, against Mr. Hamm's and Mr. Harcourt's will, inserted an ineffective attorney to conduct a Rule 32 hearing in a death penalty case — an attorney who, only weeks after the lower court's ruling, *withdrew* from representation.

124. The Sixth Amendment right-to-counsel provision applies to state post-conviction proceedings. It is well established that "regardless of whether petitioner would have been entitled to the appointment of counsel, his right to be heard through his own counsel [is] unqualified." Chandler v. Fretag, 348 U.S. 3, 5 (1954); see also, United States v. Koblitz, 803 F.2d 1523, 1527–29 (11th Cir. 1986); United States v. Ross, 33 F.2d 1507, 1523 (11th Cir. 1994).

125. Even assuming *arguendo* that a Rule 32 proceeding is a civil proceeding, Mr. Hamm still has a constitutional right under federal law to be assisted by his retained counsel.  The Alabama Constitution states "[t]hat no person shall be barred from prosecuting or defending before any tribunal in this state, by himself *or counsel*, any civil cause to which he is a party." ALA. CONST. art. I, § 10 (emphasis added). Section 10 is borrowed from the Magna Carta and has been construed in light of that history.

34

See Quick v. Western Ry. of Alabama, 92 So. 608, 609 (Ala. 1922); Ex parte Wetzel, 8 So. 2d 824, 825 (Ala. 942). As a matter of federal due process, Mr. Hamm was entitled to respect for his Alabama constitutional right to counsel, as well as his federal right to the assistance of counsel, as incorporated to the states through the Fourteenth Amendment. As the Fifth Circuit declared in Potashnick v. Port City Const. Co., "the right to retain counsel in civil litigation is implicit in the concept of fifth amendment due process." 609 F.2d 1101, 1117-18 (5th Cir. 1980). See also Reynolds v. Alabama Dept. of Transp., 4 F.Supp. 2d 1055, 1063 (M.D.Ala. 1998); F.T.C. v. Atlantex Associates, 872 F.2d 966, 970 (11th Cir. 1989); U.S. v. Romano, 736 F.2d 1432, 1437 (11th Cir. 1984); Mekdeci By and Through Mekdeci v. Merrell Nat. Laboratories, 711 F.2d 1510, 1523 (11th Cir. 1983).

126. Where the right to the assistance of counsel exists, the party with that right must be afforded fair opportunity to secure counsel of his own choice. See Powell v. State of Alabama, 287 U.S. 45, 53 (1931). Applying the Fourteenth Amendment, this Court noted there that, "If in any case, *civil or criminal*, a state or federal court were arbitrarily to refuse to hear a party by counsel, employed by and appearing for him, it reasonably may not be doubted that such a refusal would be a denial of a hearing, and, therefore, of due process in the constitutional sense." Id. at 69.

127. As a matter of federal right, the state courts deprived Mr. Hamm of his right to counsel by barring Mr. Harcourt from

representing Mr. Hamm at the Rule 32 hearing, in direct violation
of Mr. Hamm's federal constitutional rights to counsel, to due
process, and to be free from cruel and unusual punishment. The
state court adjudication of this claim resulted in a decision that
was contrary to, and involved an unreasonable application of,
clearly established United States Supreme Court precedent.

**H.   THE STATE COURT ABDICATED ITS ROLE OF IMPARTIAL JUDICIAL
DECISIONMAKER BY IMPERMISSIBLY SIGNING, WITHOUT EVEN THE SLIGHTEST
MODIFICATION, THE STATE'S "PROPOSED MEMORANDUM OPINION" IN VIOLATION
OF MR. HAMM'S FEDERAL DUE PROCESS RIGHTS.**

128. The state court completely abdicated its role as neutral
arbiter of the post-conviction challenge in this case.  The state
court simply signed the Alabama Attorney General's proposed
memorandum opinion without even changing the caption of the order.
Still today, the state court's order in this case reads: **"PROPOSED
MEMORANDUM OPINION."**   The state court made no specific findings
that the Attorney General's conclusions were his own.  The order is
repeatedly date stamped "Dec 3 1999" — the day that the Attorney
General filed the proposed order — **AND** "Dec 6 1999" — the day that
Judge Hardeman signed the "Proposed Memorandum Opinion" without
even changing the caption.

129. The state court deprived Mr. Hamm of elementary due
process when it signed the Alabama Attorney General's proposed
memorandum order without making independent findings on its own.
This is evidenced by the court's failure even to change the caption

36

to eliminate the "PROPOSED" heading, clean up the date stamps, or state anywhere that the court had independently reviewed the evidence.

130. While federal courts have tolerated the practice of courts' adopting a party's findings of fact under certain circumstances, they have expressed their disapproval and have not condoned the type of conduct engaged in this case. Constitutional due process requires that the court make an "independent judgment about the law and then decide[] that one party's proposed findings of fact and conclusions of law precisely express[] its judgment." Pennsylvania Envtl. Def. Found. v. Canon-McMillan School Dist., 152 F.3d 228, 233 (3d Cir. 1998); see also In re Colony Square, 819 F.2d 272 (11th Cir. 1987). Particularly given the deference that federal habeas courts give to state post-conviction findings, Mr. Hamm is entitled to have his case decided upon the basis of findings and legal determinations that are the result of "independent judicial labors and study" of a judge, Louis Dreyfus & Co. v. Panama Canal Co., 298 F.2d 733, 737 (5th Cir. 1962), not an Attorney General. See also Goldberg v. Kelly, 397 U.S. 254, 271 (1970) ("an impartial decision maker" is an "essential" component of due process).

131. Disposition of a capital case through a ghost-written opinion is completely at odds with the need for both the reality and appearance that review of a sentence of death be fair, objective and reliable. Johnson v. Mississippi, 486 U.S. 578 (1988);

_Zant v. Stephens_, 462 U.S. 862 (1983); _Gardner v. Florida_, 430 U.S. 349 (1977). The state court adjudication of this claim resulted in a decision that was contrary to, and involved an unreasonable application of, clearly established United States Supreme Court precedent.

## I.   THE TRIAL COURT'S INSTRUCTION ON ACCOMPLICE LIABILITY DENIED DOYLE HAMM HIS RIGHTS GUARANTEED BY THE SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS

132. At Doyle Hamm's trial, the court instructed the jury that a non-triggerman accomplice is just as guilty as the triggerman _regardless_ of whether he had a particularized intent to kill the victim as long as he is "in some way" "concerned" in the commission of a crime":

> Now, ladies and gentlemen, I further instruct you that an accomplice is defined as an associate in crime, a _partner or a partaker_ in guilt. _An accomplice is one who in some way is concerned_ in the _commission of a crime_.
>
> When two or more persons enter into a conspiracy or a plan to accomplish some unlawful act, _any act done by one of them in_ the _performance of the original conspiracy is_ the _act of all_.
>
> _If a person aids and abets another one in the commission of a crime that person is as guilty as the party who commits the crime_...
>
>         \* \* \*
>
> . . . The Court does now instruct you that the two witnesses who testified in this case, Regina Roden and Doug Roden, would be accomplices in this case. (R-1170-71).

This instruction on accomplice liability is incorrect: in the context of capital murder, a non-triggerman accomplice is only 'as guilty as the party who commits the crime' if, and only if, he has a particularized intent to kill the victim.

133. In this case, there was a factual dispute as to whether Doyle Hamm or Douglas Roden shot Patrick Cunningham. The only independent person who witnessed the robbery of the Anderson Motel, Kathryn Teresa Flanagan, identified Douglas Roden in a live line-up, but did not identify Doyle Hamm.

134. The jury instruction in this case was so egregious that it is the type of "ailing instruction [that] by itself so infected the entire trial that the resulting conviction violates due process." Cupp v. Naughten, 414 U.S. 141, 147 (1973). Federal law requires prosecutors to bear the burden of proving all elements of a charged crime beyond a reasonable doubt. In re Winship, 397 U.S. 358, 364 (1970); Sullivan v. Louisiana, 508 U.S. 275, 278 (1993). A jury instruction like this one, that can be interpreted to relieve the state of its burden of proving an element of the crime, violates due process. Sandstrom v. Montana, 442 U.S. 510 (1972); Carella v. California, 491 U.S. 263 (1989). The state court adjudication of this claim resulted in a decision that was contrary to, and involved an unreasonable application of, clearly established United States Supreme Court precedent.

J.   THE TRIAL COURT'S PENALTY PHASE JURY INSTRUCTIONS WERE CONSTITUTIONALLY FLAWED AND DENIED DOYLE HARM HIS RIGHTS GUARANTEED BY THE SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION

135. Doyle Hamm presented numerous statutory and non-statutory mitigating circumstances at the penalty phase of his trial.

136. The court's oral charge, however, failed to adequately explain the meaning and function of mitigating circumstances: the court merely defined mitigating circumstances in a circular fashion as "any circumstances that indicate or tends to indicate that the defendant should be sentenced to life imprisonment without parole instead of death;" and the court failed to list or explain the applicable non-statutory mitigating circumstances.

137. It is well established that where a capital defendant has presented mitigating evidence, the absence of adequate explanatory instructions on mitigation creates a reasonable possibility that the jury may misunderstand the meaning and function of mitigating evidence, in violation of a defendant's Sixth, Eighth and Fourteenth Amendment rights to an individualized sentence. Cunningham v. Zant, 928 F.2d 1006 (11th Cir. 1991).

138. The trial court also failed to instruct Doyle Hamm's capital sentencing jury that it had the option of sentencing Doyle to life imprisonment without parole even if it found one or more aggravating circumstances and no mitigating circumstances.

139. By limiting the jury's option to sentence Doyle to life imprisonment without parole, the court established a legal pre-

sumption in favor of the death penalty that violated Doyle's constitutional rights to due process and an individualized sentence guaranteed by the Sixth, Eighth and Fourteenth Amendments to the United States Constitution. Moore v. Kemp, 809 F.2d 702 (11th Cir. 1987) (en banc).

140. The trial court's instructions at the penalty phase also permitted the jury to use an element of the capital offense, namely that the incident was committed during the course of a robbery, as an aggravating circumstance.

141. By double-counting robbery as both an element of the crime and an aggravating circumstance, the court impermissibly undermined the narrowing function that aggravating circumstances must accomplish to satisfy Eighth Amendment requirements.

142. Moreover, the double-counting also undermined the channeling and guiding function that aggravating circumstances must accomplish with regard to the jury deliberations.

143. As a result, the trial court's penalty phase instructions denied petitioner a fair sentencing and an individualized sentence in violation of the Sixth, Eighth and Fourteenth Amendments to the United States Constitution. The state court adjudication of this claim resulted in a decision that was contrary to, and involved an unreasonable application of, clearly established United States Supreme Court precedent.

**K. THE STATE MADE IMPROPER COMMENTS AT DOYLE HAMM'S CAPITAL TRIAL THAT DENIED DOYLE HIS RIGHTS TO A FAIR TRIAL AND TO AN INDIVIDUALIZED SENTENCE, AS GUARANTEED BY THE FIFTH, SIXTH, EIGHTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.**

144.  Throughout Doyle Hamm's capital trial, the state prosecutor made improper remarks that denied petitioner a fair trial in violation of petitioner's rights to due process and a fair trial guaranteed by the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

1.   Expressions of Personal Belief.

145.  It is improper for the prosecutor to relay his personal belief about a defendant's guilt.  Quinlivan v. State, 579 So. 2d 1386 (Ala. Cr. App. 1991); Arthur v. State, 575 So. 2d 1165 (Ala. Cr. App. 1990), cert. denied, 575 So. 2d 1191 (Ala. 1991).

146.  At Doyle Hamm's trial, the prosecutor stated:

> *My job is as district attorney of this county is [sic] to see that justice is done.*  And I submit to you, ladies and gentlemen, that if you use your common sense then you consider all of the facts that are in evidence and you apply the law that His Honor will charge you, that *if justice is done in this case that you will find Doyle Harm guilty of capital murder.*  R-1129.

147.  Similarly, during the penalty phase closing argument at Doyle Hamm's capital trial, the prosecutor told the jury:

> . . . I told you before my background is religious and I like to *forgive people.*  I think, folks will tell you, even though some folks think I am a pretty mean prosecutor in *my personal life I am pretty forgiving.*  But I don't have that choice. *I don't have* that *option, because as a prosecutor I have to* do *what is right and what is justice.*  This whole community will fall apart.

R-1268-69.  See also R-1139 ('No matter what I do in my personal
life about forgiveness or sympathy for someone who is in trouble, I
am in this job.  It *would be immoral for me not to exact justice as
the law calls for it')*; R-1164 ('We ask you for nothing more than
justice and that is a verdict of guilty of capital murder.')

    2.    Expressions of Prosecutorial Discretion and Expertise.

    148.  "The prosecutor also cannot imply to the jury that he or
his office had already made the judgment that this case, above most
other capital cases, warrants the death penalty. . . This kind of
abuse unfairly plays upon the jury's susceptibility to credit the
prosecutor's viewpoint." Brooks v. Kemp, 762 F.2d 1383, 1411 (11th
Cir. 1985), vacated on other grounds, 478 U.S. 1016 (1986).  Courts
have also expressly condemned concerns references by prosecutors to
their expertise.  Brooks v. Kemp, 762 F.2d at 1410.

    149. During the penalty phase closing argument of Doyle Hamm's
capital trial, the prosecutor told the jury "I am not the kind of
prosecutor that says, oh, let's go burn everybody." R1267.

    150. In addition, the prosecutors frequently relied on their
personal expertise during his closing arguments, such as when the
Assistant Attorney General stated "There were some inconsistencies
in their stories.  I submit to you that there always are
inconsistencies in the stories." R-1149.

    3.    Expressions of Authority.

    151. Due to the prosecutor's position of authority, "improper
suggestions, insinuations, and especially, assertions of personal

knowledge are apt to carry much weight against the accused when they should properly carry none." Berger v. United States, 295 U.S. 78, 88 (1935).

152. At Doyle Hamm's trial, the prosecutor closed the penalty phase by exploiting his position of authority and exhorting the jury, as a community, to revenge the killing:

> Again as district attorney -- *as your district attorney in Cullman County I an going to ask you at this time to send a message* and think about what I am going to say maybe during the time that you are deliberating. And *I am going to ask you to send a message that we as citizens of Cullman County are not going to put up with someone coming out of here from Mississippi* or outside of the county from anywhere or within this county and committing an execution style killing like this man had to one of our citizens who had ever-y right to be alive here today. There is no reason that we should be here today.

> *In closing I would like to ask you to send a message* that we are not going to put up with it -- this type execution style killing here in Cullman County Alabama.

R-1248-49.

### 4.   Expressions of Civic Duty.

153. During the penalty phase at Doyle Hamm's trial, the prosecutor improperly argued that the jurors bore a responsibility to sentence Doyle to death:

> Now, folks, I am telling you sincerely here today we are not here enjoying the idea of giving the death penalty to that man. . . *it is our responsibility to [Patrick Cunningham] to do* it.  R-1272.

154. The prosecutor repeated and concluded his remarks with the same refrain of civic duty:

> I ask you for justice. You are not going to enjoy what you are doing. It is a serious matter. But *I submit to you that you have a responsibility.*  R-1286-87.

44

155. The prosecutor told the jury that their duty to sentence
Doyle to death was Divine:

> But we are not God.   [Defense counsel] said, leave it to
> God.  We are not God.  *But some things are given to us to
> do.    It is a responsibility that we have.*  R-1268.

156. Elsewhere, also in the closing argument at the penalty
phase, the prosecutor urged the jurors to sentence Doyle to death
and stated "the Bible also says that the governments are ordained
by God and *you are to obey what governments say.*" R-1280.

157. And the prosecutor also gave his "civic duty" theme a
Hollywood twist, telling the jury all about some movie about a
certain "Sergeant York" who, although he was personally against
killing anyone for any reason, killed lots of Germans during World
War II out of a sense of duty.  R-1270-1271.

   5.   Inflaming the Jury with Community Prejudice and Irra-
        tional Fear.

158. Appeals to the passions and prejudices of the jurors, and
other inflammatory remarks, are also impermissible.  See Viereck v.
United States, 318 U.S. 236, 247-48 (1943); American Bar
Association, Standards Relating to the Prosecution Function,
Section 3-5.8 (c) (1982).

159. At Doyle's capital trial, the Assistant Attorney General
inflamed the jury with community prejudice during his closing
argument at the guilt stage, when he said:

> When Patrick Cunningham died it affected everyone of us
> in *this community.*
>
> I told you, I think, that *Cullman is a* great place.
> People have treated me great here.   *There is* a lot *of*

45

things that *you can say about a community.* You can say
they treat people great, a lot of opportunity here.

People are friendly, you can get ahead here. *There is
nothing better that you can say that they treat everybody
&like no matter who they are, rich or poor, or black or
white, young or old, just as important as they treat your
own* life.

You think about Patrick Cunningham when you go in that
jury room..... And think how you would feel if you were
in Pat Cunningham's place.  Because the reason you are
here is to see that that doesn't happen again.  R-1162-
63.

160. Also at the quilt phase of the trial, the prosecutor

instilled the jury with fear, threatening the jury that:

But you know the way the law works, the law says if we
don't care about somebody's death around here we don't
even know, *we can't expect protection for ourself, if it
comes home.*  R-1162.

161. At the penalty phase of Doyle's trial, the prosecutor

similarly argued that:

Like I told you yesterday we are here, because a citizen
in *your county* is dead.  And he is the most important
person to you in this community right now at this minute.
 He is as important as your own life. *Because if we don't
consider the same feelings* about Pat *Cunningham as we do
ourselves, we are back to the jungle.*  R-1286.

162. At the penalty phase of the capital trial, the Assistant

Attorney General impermissibly inflamed the passions of the jurors

when he exhorted them to take the deceased victim into the jury

room with them and have him participate in the jury deliberations.

163. The prosecutor emphatically stated "I submit you ought to

take a 13th juror in there with you.  And you ought to consider

46

what that 13th juror has to say and that is Pat Cunningham." R-1286.

164. The state's comments -- intended only to inflame the already strong community prejudice, to stir the jurors, passions and to instill fear in the jury room -- were improper under state law and under the United States Constitution.

6. Expressions of Future Dangerousness.

165. It is well established that a prosecutor may not argue that a defendant will commit future illegal acts for the purpose of proving that the defendant is guilty. Ex parte Smith, So. 2d (Ala. 1991).

166. During the guilt phase closing arguments at Doyle Hamm's trial, the prosecutor impermissibly made reference to Doyle's alleged future dangerousness:

> Mr. Cunningham made a big mistake if that was true. He didn't think that Doyle Hamm was for real, that he intended to kill him.
>
> And I submit to you, you shouldn't make the same mistake and think that Doyle Hamm is not for real, because he is. He meant to kill Mr. Cunningham. I submit to you that he is a dangerous man. R-1155.

167. Given the context of this remark, the state's message was clear: Doyle Hamm is a dangerous man and, if the jury does not take him seriously, he will kill again.

168. The prosecutor repeated the same refrain at the penalty stage of the capital trial, when he argued that sentencing Doyle to death would specifically deter him from ever killing anyone again:

> Murder is not just killing someone, murder is destroying their personality. It is the intentional, unlawful

47

> killing of someone.  You tell me that is not worth
> revenge.  They can tell you all day long that this isn't
> going to deter anybody. *They can tell you that* until *the*
> *cows come home, because you deter this man right here.*

R-1283.

169. These arguments about Doyle Hamm's future dangerousness, including the comments about specific deterrence, denied Doyle a fair trial and an individualized sentence.

    7.   <u>Fabricating Facts</u>.

170. It is totally improper for a prosecutor to argue facts not in evidence or to misstate the facts.  <u>Donnelly v.</u> <u>DeChristoforo</u>, 416 U.S. 637 (1974); <u>Arthur v. State</u>, <u>supra</u>, 575 So. 2d at 1186.

171. During both the guilt and penalty phase closing arguments, the prosecutor fabricated facts about the crime that were grossly prejudicial to Doyle Hamm and had absolutely no basis in the evidence and no connection with reality.

172. The prosecutor made up all kinds of stories about how Pat Cunningham would have done anything the assailant told him to do in order to save his life.  R-1281-82; R-1161; R-1284.

173. For instance, during the penalty phase, the prosecutor hypothesized that [i]f (Doyle Hamm) would have asked (Pat Cunningham) to *take his clothes off* he would have done it, because that man had a gun on him and he wanted to live.' R-1282.

174. There is no basis and no reason -- either in fact or in law -- to interject highly prejudicial imagery of sexual assault and homosexual battery into the capital trial of Doyle Hamm.

8.    Other Improper Arguments.

175. Throughout the closing arguments, the prosecutor also made repeated improper references to the impact of the crime on the victim's family.   R-1137-63; R-1266-86.

176. These remarks -- taken alone or in conjunction with all the above comments -- were clearly improper, violated state law and denied Doyle Hamm his rights to a fair trial and to an indi-vidualized sentencing guaranteed by the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution. The state court adjudication of this claim resulted in a decision that was contrary to, and involved an unreasonable application of, clearly established United States Supreme Court precedent.

L.    **THE TRIAL COURT'S CONSIDERATION OF A PREJUDICIAL AND IMPROPER PRE-SENTENCE REPORT AND OF IMPROPERLY OBTAINED CORRESPONDENCE BETWEEN DOYLE HAMM AND HIS FAMILY AND FRIENDS VIOLATED DOYLE IS RIGHTS TO DUE PROCESS AND A FAIR TRIAL GUARANTEED BY THE FOURTH, FIFTH, SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION**

177. Before sentencing Doyle Hamm to death on December 1, 1987, the trial court read and relied on a presentence report prepared by the Alabama Board of Pardons and Paroles.

178. The pre-sentence report contained information about the murder that Doyle Hamm was charged with having committed in Mis-sissippi on January 23, 1987.

179. The pre-sentence report also included an unsubstantiated accusation that Doyle Hamm intended to kill the prison supervisor during his incarceration at the Cullman County Jail.

180. This information was not a proper subject of consideration: the murder charge in Mississippi and the attempted murder accusation in Cullman amounted to non-statutory aggravating circumstances that could not be considered by the court under Alabama law. Berard v. State, 402 So. 2d 1044, 1050 (Ala. Cr. App. 1981); Lewis v. State, 380 So. 2d 970, 971 (Ala. Cr. App. 1980). 86. The report also impermissibly mentioned another robbery that Doyle Hamm was alleged to have committed in Lee County, Mississippi, as well as inadmissible hearsay about Doyle Hamm's reputation in the community.

181. This hearsay evidence was unconfronted, inadmissible and improper and should not have been considered by the sentencing judge. Gardner v. Florida, 430 U.S. 349 (1977); Proffitt v. Wainwright, 685 F.2d 1227 (11th Cir. 1982), modified, 706 F.2d 311 (11th Cir. 1983), cert. denied, 464 U.S. 1002 (1983).

182. During the course of discovery, the prosecutor turned over to defense counsel and made known to the trial judge photocopies of personal letters that Doyle Hamm had written from jail to his mother, siblings, family and friends.

183. In those personal letters, Doyle Hamm confessed to another crime in Mississippi.

184. These letters were improperly seized from Doyle Hamm.

185. The trial court's consideration of the presentence report and of these personal letters impermissibly influenced the court to sentence Doyle Hamm to death, in violation of Petitioner's rights guaranteed by the Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution. The state court adjudication of this claim resulted in a decision that was contrary to, and involved an unreasonable application of, clearly established United States Supreme Court precedent.

**M. THE SECURITY MEASURES AT DOYLE HAMM'S TRIAL CREATED A LOADED ATMOSPHERE THAT DENIED PETITIONER HIS DUE PROCESS RIGHT TO A FAIR TRIAL.**

186. During the capital trial, Doyle Hamm was heavily guarded by an unreasonable number of law enforcement officers in close proximity to him and throughout the courtroom.

187. These highly prejudicial security measures destroyed jury impartiality and denied Doyle Hamm his rights guaranteed by the Sixth, Eighth and Fourteenth Amendments to the United States Constitution. Elledge v. Duager, 823 F.2d 1439, 1450-52 (11th Cir. 1987).

188. On several occasions, Doyle Hamm sat before the jury restrained with wrist and leg irons.

189. The United States Supreme Court has repeatedly stated that the practice of shackling a criminal defendant is an inherently prejudicial practice. Holbrook v. Flynn, 475 U.S. 560, 568-69 (1986); Estelle v. Williams, 425 U.S. 501, 503-04 (1976).

190. Physically restraining Doyle Hamm during the trial was inherently prejudicial and, accordingly, denied him the right to a fair trial guaranteed by the Constitution of the United States. The state court adjudication of this claim resulted in a decision that was contrary to, and involved an unreasonable application of, clearly established United States Supreme Court precedent.

**N.   THE TRIAL COURT FAILED TO EXCUSE FROM THE JURY VENIRE PERSONS WHOSE BELIEFS AND EXPERIENCES SUBSTANTIALLY IMPAIRED THEIR ABILITY TO SIT ON PETITIONER'S JURY, IN VIOLATION OF THE SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND STATE LAW.**

191. Venire person Wm. R. McQuillin unambiguously stated during voir dire that he would impose capital punishment on anyone who intentionally took someone else's life.  R-160; R-212.

192. Venire person Kevin Myrex also unambiguously stated that he would impose the death penalty on anyone who intentionally killed someone else.  R-161; R-202.

193. In the State of Alabama, the gravamen of the capital offense is an intentional killing and a criminal defendant is never death eligible unless he has *intentionally* killed one or more persons. Ex parte Kyzer, 399 So. 2d 330 (Ala. 1981).

194. In response to the court's question whether anyone had a fixed opinion in Doyle Hamm's case, potential juror Sylvia Burks volunteered that [t]he little boy whose father was killed is in my room in school.' R-95.

195. Sylvia Burks later repeated that the victim's son was in her second grade classroom and had spoken to her about his father being killed.

196. As a matter of constitutional law, Sylvia Burks should have been presumed biased for purposes of this capital trial.

197. The court's failure to remove for cause venire members McQuillin, Myrex and Burks denied Doyle Hamm his rights to an impartial jury, to a fair trial and sentencing, and to the free exercise of his peremptory challenges, in violation of the Sixth, Eighth and Fourteenth Amendments to the United States Constitution. The state court adjudication of this claim resulted in a decision that was contrary to, and involved an unreasonable application of, clearly established United States Supreme Court precedent.

**O.  THE TRIAL COURT DENIED DOYLE HAMM HIS RIGHT TO A PEREMPTORY CHALLENGE AND TO THE EQUAL PROTECTION OF THE LAW WHEN IT ALLOWED HIM ONLY 37 PEREMPTORY STRIKES AND ALLOWED THE STATE 38.**

198. During jury selection, the trial court allowed Doyle Hamm only 37 peremptory challenges and allowed the state 38 peremptory strikes.

199. The court's unequal distribution of peremptory challenges denied Doyle Hamm his rights guaranteed by the Sixth, Eighth and Fourteenth Amendments to the United States Constitution. The state court adjudication of this claim resulted in a decision that was contrary to, and involved an unreasonable application of, clearly established United States Supreme Court precedent.

**P. THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT ADMITTED INTO EVIDENCE AN UNMARKED GREEN ARMY JACKET, BULLETS FOUND IN THAT JACKET AND TESTIMONY SURROUNDING THE JACKET AND BULLETS, BECAUSE THE JACKET REMAINED UNATTENDED ON A DESK IN THE POLICE DEPARTMENT IN CITY HALL FOR OVER THREE DAYS**

200. A green army jacket was seized on January 25, 1987, during a search of the trailer that belonged to Alfred Uselton.

201. The army jacket was taken to the Cullman Police Department in City Hall and was left overnight unattended on the desk of an investigator at the Police Department.

202. A state's witness testified that, the following day, he discovered bullets that were compatible with the alleged murder weapon in a pocket of that green army jacket.

203. The same green army jacket seized on January 25, 1987, in the trailer of Alfred Uselton was never tagged or marked and instead remained unattended on a desk in the Police Department in City Hall until January 28, 1987.

204. The state did not establish a full chain of custody for the army jacket after January 28, 1987.

205. Because the state investigators never marked or otherwise identified the green army jacket and because the state did not establish a complete chain of custody regarding the jacket, and because of the break in the chain of custody of the green army jacket, neither the jacket, nor the bullets, nor any testimony about the jacket or the bullets were admissible under state law, and the court's failure to exclude the evidence denied Doyle Hamm

his right to a fair trial, to due process and to be free from cruel and unusual punishment guaranteed by the Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution. The state court adjudication of this claim resulted in a decision that was contrary to, and involved an unreasonable application of, clearly established United States Supreme Court precedent.

**Q. THE TRIAL COURT IMPROPERLY INSTRUCTED THE JURY ON REASONABLE DOUBT AND IMPROPERLY REFUSED PETITIONER'S PROPOSED JURY INSTRUCTION CONCERNING VOLUNTARILY INTOXICATION, IN VIOLATION OF STATE LAW, THE FIFTH, SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.**

206. At Doyle Hamm's trial, the court improperly instructed the jury on the element of reasonable doubt at both the guilt and penalty phases. R-1166-67; R-1293-94.

207. The court's instructions on reasonable doubt was legally incorrect and would have allowed the jury to find Doyle Hamm guilty on a degree of proof below that required by the Due Process Clause of the United States Constitution. Cage v. Louisiana, 498 U.S. 39, 111 S.Ct. 328, 112 L.Ed. 2d 339 (1990).

208. The court's error was compounded by the prosecutor's improper comments on reasonable doubt. R-1140-42.

209. The trial court also refused counsel's requested instruction that a person is voluntarily intoxicated if he is 'incapable of rational action.'

210. The court's ruling violated state law, see Crosslin v. State, 446 So. 2d 675, 681 (Ala. Cr. App. 1983), cert. denied (Ala.

1984), as well as Petitioner's rights to a fair trial guaranteed by the Fifth, Sixth, Eighth and Fourteenth Amendments. The state court adjudication of this claim resulted in a decision that was contrary to, and involved an unreasonable application of, clearly established United States Supreme Court precedent.

## R. THE INTRODUCTION OF UNNECESSARY AND PREJUDICIAL PHOTOGRAPHS OF THE DECEASED VIOLATED DOYLE HAMM'S RIGHTS UNDER THE SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS.

211. At Doyle Hamm's trial, the state introduced gruesome, manipulated, prejudicial and unnecessary photographs of the victim that inflamed the jurors and denied Mr. Hamm a fair trial.

212. The state introduced a gruesome and unnecessary closeup of the victim's head that had been deliberately turned over to face the camera.

213. The state also introduced post-autopsy close-ups of the entry and exit wounds to- the head of the victim.

214. The prosecutor admitted in closing argument that these photographs were bloody and gorey and would inflame the jurors.

215. The state's introduction of these gruesome and unnecessary photographs denied Doyle Hamm his rights guaranteed by the Sixth, Eighth and Fourteenth Amendments. The state court adjudication of this claim resulted in a decision that was contrary to, and involved an unreasonable application of, clearly established United States Supreme Court precedent.

**S.    THE TRIAL COURT ERRED IN FAILING TO QUALIFY THE EXPERT WITNESSES, IN VIOLATION OF THE UNITED STATES CONSTITUTION.**

216.  Three witnesses gave expert opinion testimony at the trial of Doyle Hamm, namely Carol Curlee (fingerprint evidence), Brent Wheeler (ballistic evidence), and Joseph Embry (pathological evidence).

217.  None of these witnesses were ever qualified by the judge as experts in their field.

218.  The court's failure to qualify these three experts, even though they gave expert opinion testimony, denied Doyle Hamm his rights guaranteed by the Sixth, Eighth and Fourteenth Amendments to the United States Constitution. The state court adjudication of this claim resulted in a decision that was contrary to, and involved an unreasonable application of, clearly established United States Supreme Court precedent.

**T. THE TRIAL COURT'S FAILURE TO CHANGE THE VENUE OF THE TRIAL DENIED PETITIONER A FAIR TRIAL AND AN IMPARTIAL AND INDIVIDUALIZED SENTENCING HEARING IN VIOLATION OF THE FIFTH, SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION**

219.  According to the Cullman Times, Doyle Hamm's sentence of death was "the first capital murder conviction in the history of Cullman County." *Supreme Court Denies Hamm Sentence Appeal,* Cullman Times, page 1, December 4, 1990.  Based on petitioner's independent research, Cullman County's first *and only* legal hanging for a crime took place on September 25, 1914, when George James was executed

for the murder of Enoch Claiburne. Margaret Jean Jones, Cullman County Across The Years, page 38.

220. As a result, Doyle Hamm's capital indictment and trial received a tremendous amount of pre-trial and trial publicity.

221. Numerous jurors indicated in voir dire that they had heard or read about the circumstances of the crime and about Doyle Hamm. R-39-220.

222. Doyle Hamm moved pre-trial for a change of venue.

223. The trial court did not receive any evidence on the motion, but nevertheless denied the motion for change of venue.

224. It was incumbent upon the trial court in this case to order a change of venue because petitioner could not reasonably expect to receive a fair trial in a community that had been dominated by so much pretrial publicity and where it was generally known that Petitioner was accused of another murder in the neighboring State of Mississippi.

225. The trial court's failure to change the venue of trial denied petitioner his rights guaranteed by the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution. The state court adjudication of this claim resulted in a decision that was contrary to, and involved an unreasonable application of, clearly established United States Supreme Court precedent.

U.    SENTENCING DOYLE HAMM TO DIE IN THE ELECTRIC CHAIR OR BY
LETHAL INJECTION IS CRUEL AND UNUSUAL PUNISHMENT PROHIBITED BY THE
UNITED STATES CONSTITUTION.

226. Mr. Hamm was sentenced to die by electrocution in
Alabama's electric chair, a method that violates the Eighth
Amendment. The most recent inmates executed in Alabama have
suffered death by lethal injection. This too violates the Eighth
Amendment.

227. Alabama's lethal injection execution procedure, which is
similar to the procedure typically used by lethal injection states,
proscribes the sequential administration of sodium thiopental for
anaesthesia, pancuronium bromide or Pavulon to induce paralysis,
and potassium chloride to cause death. There is considerable
evidence demonstrating that the lethal injection protocols used in
Alabama will cause Mr. Hamm to consciously suffer an excruciatingly
painful and protracted death.

228. In determining whether a punishment is cruel and unusual
and therefore prohibited by the Eighth Amendment, the United States
Supreme Court has required an inquiry into the evolving standards
of decency. See, e.g., Hudson v. McMillian, 503 U.S. 1, 8 (1992).
The Court has held punishments to be violative of the Eighth
Amendment based, in part, on evidence of a legislative consensus
rejecting the type of punishment at issue. See, e.g., Roper v.
Simmons, 125 S.Ct. 1183 (2005); Atkins v. Virginia, 536 U.S. 304
(2002). The unmistakable trend over the past two decades of

condemning the use of neuromuscular blocking agents, such as pancuronium bromide, in euthanizing pets is clear evidence that the practice violates the Eighth Amendment ban on cruel and unusual punishment. These recent alterations of euthanasia protocols for animals underscore the inhumanity of the chemicals currently used in Alabama. It is thus clear that Alabama's present use of lethal injection is inconsistent with society's evolving standards of decency.

229. If Mr. Hamm is executed by electrocution or lethal injection, his death likely will involve unnecessary and excruciating pain. The Eighth Amendment cannot be construed to uphold the kind of error and pain that has attended the electrocution and lethal injection protocol used in Alabama. This Court should grant habeas corpus relief on this issue.

230. A sentence of death by electrocution or lethal injection violates the prohibition against cruel and unusual punishment, in violation of the Eighth and Fourteenth Amendments to the Unites States Constitution. The state court adjudication of this claim resulted in a decision that was contrary to, and involved an unreasonable application of, clearly established United States Supreme Court precedent.

V. **THE TRIAL COURT FAILED TO FIND AS A MITIGATING CIRCUMSTANCE THAT DOYLE HAMM SUFFERS FROM MENTAL ILLNESS, IN VIOLATION OF PETITIONER'S RIGHTS GUARANTEED BY THE FIFTH, SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION**

231. Doyle Hamm suffers from mental disorders that caused him extreme mental and emotional disturbance and impaired his ability to appreciate the criminality of his conduct and to conform his conduct to the requirements of the law.

232. The trial court nevertheless did not found either of the two mental health mitigating circumstances listed in the Death Penalty statute at §13A-5-51(2) and (6), Code of Alabama (1975).

233. The trial court also did not find a non-statutory mitigating circumstance corresponding to Doyle Hamm's mental illness.

234. The court's failure to find as a mitigating circumstance Doyle Hamm's mental illness denied Petitioner his rights guaranteed by the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution. Magwood v. Smith, 791 F.2d 1438, 1449 (11th Cir. 1986) (trial court's refusal to find that offense was committed under extreme mental disturbance or that defendant could not conform behavior to law entitled petitioner to a new sentencing hearing). The state court adjudication of this claim resulted in a decision that was contrary to, and involved an unreasonable application of, clearly established United States Supreme Court precedent.

61

**W. THE TRIAL COURT'S FAILURE TO SUPPRESS DOYLE HAMM'S STATEMENT AND THE EVIDENCE SEIZED AT THE TRAILER VIOLATED STATE LAW AND DENIED PETITIONER HIS RIGHTS GUARANTEED BY THE FOURTH, FIFTH, SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION**

235. Doyle Hamm was arrested and taken into custody on the authority of a fugitive warrant which was issued without probable cause.

236. The fugitive warrant was invalid on its face for failure to comply with the requirements of Code of Alabama (1975), §15-9-40.

237. The fugitive warrant was also executed in violation of Code of Alabama (1975), §15-9-42.

238. As a result, Doyle Hamm's statement was the fruit of an illegal arrest and should have been excluded.

239. Upon arrest, Doyle Hamm requested the assistance of counsel and the assistance of a doctor; Mr. Hamm was never provided with counsel before being subjected to interrogation.

240. Doyle Hamm was interrogated under coercive circumstances. He was arrested by two SWAT teams of police officers, beaten and threatened, taken to the hospital after the interrogation and overheard police officers threatening his life.

241. The only information connecting Doyle Hamm to the trailer that was searched and where evidence was seized came solely from Douglas Roden, a suspect in this capital murder and therefore not a reliable informant.

242. The search warrant permitted a general exploratory search.

243. The trial court's failure to suppress Doyle Hamm's statement and the evidence seized at the trailer denied Petitioner his rights guaranteed by the Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution. The state court adjudication of this claim resulted in a decision that was contrary to, and involved an unreasonable application of, clearly established United States Supreme Court precedent.

**X. THE STATE COURT FAILED TO MAKE A FULL RECORD OF THE PROCEEDINGS IN STATE POST-CONVICTION IN VIOLATION OF MR. HAMM'S RIGHT TO DUE PROCESS.**

244. Doyle Hamm filed a motion to supplement the record of the Rule 32 proceedings with the transcript of a pre-trial hearing on March 6, 1995. The trial court subsequently entered an order finding that the transcript of the March 6, 1995 pre-trial hearing had been lost and could not be produced. The pre-trial hearing that occurred on March 5, 1995, is crucial to these proceedings, and to a full and fair review in federal habeas corpus. At that March 5, 1995, hearing, the parties argued about several issues, including issues of procedural default — crucial arguments that go to the heart of this federal habeas petition. Based in part on those arguments, the lower court entered a mysterious order dated January 29, 1996, dismissing all claims except ineffective assistance of counsel — a mysterious order that was not docketed

and that was not sent to the parties. In addition, the transcript of the March 5, 1995, hearing is crucial to Mr. Hamm's claim concerning the improper disbarment of Mr. Harcourt.

245. It is absolutely essential that capital sentences be reviewed on a complete record. See Dobbs v. Zant, 506 U.S. 357, 358 (1993); Gardner v. Florida, 430 U.S. 349 (1977) (plurality opinion) (emphasizing critical nature of complete record in review of capital cases); Gregg v. Georgia, 428 U.S. 153, 167 (1976) (joint opinion of Stewart, Powell and Stevens, JJ.) (transmittal on appeal of complete record is important safeguard against arbitrariness and caprice). In a capital case, the Eighth Amendment requires that exacting standards be met to insure that it is fair, and that the determinations made are reliable. "The fundamental respect for humanity underlying the Eighth Amendment's prohibition against cruel and unusual punishment gives rise to a special 'need for reliability in the determination that death is the appropriate punishment in any capital case.'" Johnson v. Mississippi, 486 U.S. 578, 584 (1988) (quoting Gardner v. Florida, 430 U.S. 349, 363 (1977)). The state court adjudication of this claim resulted in a decision that was contrary to, and involved an unreasonable application of, clearly established United States Supreme Court precedent.

## IV.  PRAYER FOR RELIEF

246. For all of the above stated reasons and other such reasons as may be made upon amendment of this petition and a full evidentiary hearing, Doyle Lee Hamm respectfully asks this Honorable Court to grant him the following relief:

(a) Grant petitioner's accompanying motion to proceed in this matter *in forma pauperis*;

(b) Afford petitioner an opportunity to reply to any responsive pleading filed by respondent;

(c) Grant petitioner discovery under Rule 6 of the Rules Governing Habeas Corpus Cases and a sufficient period of time to conduct discovery, and further grant petitioner authority to obtain subpoenas to further document and prove the facts set forth in this petition;

(d) Grant petitioner an evidentiary hearing at which additional proof may be offered supporting the allegations set forth in this petition;

(e) Permit petitioner after additional factual development an opportunity to brief and argue the issues presented in this petition;

(f) Issue a writ of habeas corpus granting Mr. Hamm relief from his unconstitutionally obtained conviction and sentence of death; and

(g) Grant such further and other relief as may be appropriate.

Respectfully submitted,

Bernard E. Harcourt
Professor of Law
University of Chicago Law School
1111 E. 60th St.
Chicago, IL 60637
(773) 834-4068

Counsel for Mr. Hamm

## ATTORNEY'S VERIFICATION

I affirm under penalty of perjury that, upon information and belief, this Petition for Writ of Habeas Corpus is true and correct. Executed on  **May 15, 2006** .

Bernard E. Harcourt

CERTIFICATE OF SERVICE

I certify that on _____May 15, 2006_____, a copy of the attached

document was served by ~~first-class mail~~ on:
                                Federal Express

Troy King
Office of the Attorney General
Alabama State House
11 South Union Street
Montgomery, AL 36130

_____
Bernard E. Harcourt